UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES--ORDER

Case No.   SACV 09-765 AN                              Dated:  October 9, 2009

Title:   Orange Second, LLC v. Greystone Servicing Corp., et al.
===================================================================
Present: **Hon. Arthur Nakazato,  United States Magistrate Judge**

| Melissa Cash | CS 10-8-09 |
|---|---|
| Deputy Clerk | Court Smart |

| Appearances: | Paul H. Parilla, Esq. of Parilla, Garber & Ettinger, LLP for plaintiff Orange Second, LLC ("Plaintiff") |
|---|---|
| | Alan A. Greenberg of GreenbergTraurig, LLP for defendant Greystone Servicing Corp. ("Greystone") |
| Proceedings: | Greystone Servicing Corp.'s motion to dismiss the second amended complaint (dkt. #13) ("Motion") |
| Rulings: | The Motion is granted with prejudice.  The Clerk is directed to prepare and enter a Judgment that dismisses the action with prejudice against Greystone and dismisses all unserved doe Defendants without prejudice. |

Discussion:

On October 8, 2009, the case was called and counsel stated their appearances for the record.  After considering the parties' respective oral arguments and papers, the Motion was taken under submission and the Motion was granted for the reasons set forth in the attached Tentative Order (as modified following the hearing), which is adopted as the Court's final order.  The Clerk is directed to prepare and enter a Judgment that dismisses the action with prejudice against Greystone and dismisses all unserved doe defendants without prejudice.

IT IS SO ORDERED.

                                                                                      00: 14

cc:   All Parties                                          Initials of Deputy Clerk: mc

Orange Second, LLC v. Greystone Servicing Corp., et al., SACV 09-765 AN

Tentative Order re Motion to Dismiss (dkt. #13)
(as modified following the hearing)

## I. Summary of Proceedings

On May 6, 2009, plaintiff Orange Second, LLC ("Plaintiff") commenced this action against defendant Greystone Servicing Corporation, Inc. ("Greystone") by filing its complaint in the Orange County Superior Court (case no. 30-2009-001-22656) On Monday, July 6, 2009, Greystone timely removed the action to this Court pursuant to 28 U.S.C. § 1441 by filing its notice of removal (dkt. #1), which states it was served with the summons and complaint on June 4, 2009, and provides copies of the summons and complaint as exhibits. (Notice of Removal, ¶ 2, exhibits.)

On July 13, 2009, Greystone filed a motion to dismiss the original complaint (dkt. #4). On August 6, 2009, Plaintiff filed a response (dkt. #9) that stated it intended to file a first amended complaint and on August 14, 2009, Plaintiff did proceed to file its First Amended Complaint (dkt. #10) ("FAC") raising eleven causes of action for damages, equitable and declaratory relief.

On September 8, 2009, Greystone filed its pending Rule 12(b)(6) motion to dismiss ("Motion") the FAC without leave to amend. Plaintiff has filed an opposition (dkt. #14), an amended opposition (dkt. #16), and Greystone has filed a reply (dkt. #17). Having read and considered the Motion and related papers, the Court grants the Motion with prejudice for the reasons discussed below.

## II. Discussion

### A. Jurisdiction

The Court finds it has original diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because the allegations of the FAC establish Plaintiff and Greystone are citizens of different states, and that the amount in controversy exceeds $75,000. (FAC, ¶¶ 1, 3, 14 and 18.) Both parties have consented to the Magistrate Judge's jurisdiction. (Statement of Consents to Proceed (dkt. ##5-6).)

## B.     Legal Standard - Rule 12(b)(6)

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. In its Motion, Greystone correctly asserts the proper standard of review for resolving a Rule 12(b)(6) motion is now controlled by *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (May 18, 2009), which heavily relied upon the Court's prior opinion in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007). (Mot. at 4.) Plaintiff disregards both *Iqbal* and *Twombly* in its opposition. Instead, Plaintiff cites[1] to several non-controlling lower court cases that pre-date *Iqbal* and *Twombly*. (Amd. Opp. at 3-6.)

In *Iqbal*, the Supreme Court stressed *Twombly* "expounded the pleading standard for 'all civil actions[.]'" *Iqbal*, 129 S. Ct. at 1953. *Twombly* held a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. *Iqbal* also clarified *Twombly's* plausibility test by holding a claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

*Iqbal* further holds *Twombly's* two-prong test must be followed in resolving a Rule 12(b)(6) motion. *Twombly's* first prong requires this Court to accept all well-pleaded factual allegations as true, but "[t]hread-bare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Nor must the Court "accept as true a legal conclusion couched as a factual allegation." *Id*. at 1949-50 (quoting *Twombly*, 550 U.S. at 555). Second, assuming the veracity of well-pleaded non-conclusory factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." *Id*. at 1950. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*.

"A copy of a written instrument that is an exhibit to a pleading is a part of a pleading for all purposes." Rule 10(c). Consequently, courts may disregard "allegations contradicting documents that are referenced in the complaint or that are

---

[1] It would have also been helpful if Plaintiff's case citations identified the specific circuit and district courts in accordance with the conventional Bluebook standard.

properly subject to judicial notice." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (citing *Sprewell* and *Outdoor Media Group, Inc.*); *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987) (holding court may consider facts established by exhibits attached to the complaint). Further, "in order to '[p]revent [] plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting . . . documents upon which their claims are based,' a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

The court cannot assume the plaintiff can prove facts that are not alleged in the complaint. *Associated Gen. Contractors of Cal., Inc. v. State Council of Carpenters*, 459 U.S. 519, 526, 103 S. Ct. 897 (1983).

## C.    The FAC's Allegations And Exhibits

The non-conclusory factual allegations and exhibits attached to the FAC establish the following.

Plaintiff is a Nevada limited liability company. Plaintiff is the owner of two apartment buildings, one in Orange, California (the "Oak Street Property") and another in Anaheim, California (the "Almont Property").

In October or November 2006, Plaintiff decided to obtain loans from Greystone using the Oak Street Property and the Almont Property as security. Plaintiff's managing member (Louise McCain) entered into loan negotiations with Greystone. The negotiations resulted in Greystone providing Plaintiff with two rate lock confirmation letters ("Rate Lock Letters") dated November 20, 2006, for two Fannie Mae DUS loans that were subsequently evidenced by two standard Fannie Mae MultiFamily Notes ("Notes"), one for each property. Plaintiff obtained the Note secured by the Oak Street Property on or about November 30, 2006, and Plaintiff obtained the Note secured by the Almont Propery on or about December 1, 2006. Shortly thereafter, Plaintiff closed on two loans with Greystone, one for $1.43 million that was secured by the Oak Street Propery, and the other for $860,000 that was secured by the Almont Property. The Rate Lock Letters and the Notes are attached as exhibits to the FAC and are expressly incorporated by reference.

Plaintiff's primary complaint is directed at the amount of the prepayment

premium if Plaintiff pays off the loans early. The Rate Lock Letters provide, "Yield Maintenance Period: 15 years; following 14 years and nine (9) months at one percent; remaining three (3) months open." Further, Schedule A, section (a)(ii)(C), to the Notes sets forth a detailed explanation of how the prepayment premium within the 15-year Yield Maintenance Period would be calculated. Specifically, Schedule A explains the amount of the prepayment premium during the relevant period shall be the "greater of" one-percent of the amount of principal being pre-paid or "the product obtained by *multiplying*" three other variables that are clearly described but may not be readily understood. Schedule A is a Fannie Mae form for multifamily loans, and was initialed by Ms. McCain on Plaintiff's behalf. Schedule A further provides that, during the next 14 years and 9 months after the Yield Maintenance Period, the prepayment premium is simply one-percent, and there is no prepayment premium during the final three months of the loan.

Despite the above language in the Rate Lock Letters and the corresponding Notes, Plaintiff principally alleges, "[t]he problem lies in the fact the Prepayment Formula was never mentioned, discussed, alluded to, disclosed or referred to in either the [Rate Lock Letters], and as Plaintiff did not have any loan documents at the time it was provided with the Rate Lock Letters, it could have not known about the Prepayment Formula at the time it received the Rate Lock Letters." (FAC, ¶ 21.) On information and belief, Plaintiff alleges Greystone represented to Plaintiff through the Rate Lock Letters that if it prepaid the entirety of the loans within the first 14 years and 9 months after the funding, the prepayment premiums would be one percent of the original principal amount for each loan or, more specifically, $14,300 for the $1.43 million loan secured by the Oak Street Property, and $8,600 for the $860,000 loan secured by the Almont Property. In early May 2008, Plaintiff notified Greystone that it desired to payoff the Notes. However, on May 8, 2008, Greystone notified Plaintiff the prepayment premium for just the Oak Street Property Note would be $280,026.64, and provided Plaintiff with a written statement showing how the amount was calculated in accordance with the terms of the prepayment formula set forth in Schedule A of the Oak Street Property Note.

The eleven claims in the FAC against Greystone are based upon the foregoing allegations and others, each of which are more fully described and discussed below.

**D.   Rescission and Reformation Claims Based On Unilateral Mistake (Claims 1 and 4)**

Plaintiff principally alleges the Notes should be rescinded or reformed because of a unilateral mistake of fact -- its misunderstanding of the amount of the prepayment premium in the Notes because it was not clearly spelled out in the Rate Lock Letters. However, a mistake of fact cannot be based on simply misreading the contractual documents. To support the equitable remedies of rescission or reformation, the mistake of fact must be "a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake." Cal. Civ. Code § 1577. "Failure to make reasonable inquiry to ascertain or effort to understand the meaning and content of the contract upon which one relies constitutes neglect of a legal duty such as will preclude recovery for unilateral mistake of fact." *Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 615 (1975). Further, in order to preserve stability in commercial transactions, "courts will not set aside contractual obligations, particularly where they are embodied in written contracts, merely because one of the parties claims to have been ignorant of or misunderstood the provisions of the contract. [Citations.] This is especially true where the contractual obligation sought to be set aside has been executed by the complainant without the exercise of reasonable care." *Lawrence v. Shutt*, 269 Cal. App. 2d 749, 765 (1969).

Claims 1 and 4 fail to state plausible claims for rescission or reformation because the non-conclusory allegations and exhibits attached to the FAC establish the unilateral mistake Plaintiff complains about is unmistakably attributable to the failure of its designated representative to read the Notes with the requisite duty of care before signing them and, in particular, inquire about the prepayment formula set forth in Schedule A of the Notes if she found the formula to be unclear or confusing. Plaintiff has failed to allege or show that its agent made any inquires or expressed any concerns about the formula, or that Greystone's representatives said or did anything to mislead about the formula. To the contrary, Plaintiff's representative even signed her initials on Schedule A of each of the Notes, indicating that Plaintiff was presented with and reviewed the prepayment terms.

Nonetheless, Plaintiff contends the yield maintenance language in the Rate Lock Letters was "ambiguous and misleading," "virtually tantamount to a misrepresentation of a material fact," and that Plaintiff's unilateral mistake was Greystone's fault because "Plaintiff did not even receive the loan documents until they were provided immediately prior to execution and submission to the escrow." (Amd. Opp. at 9.) Plaintiff's rhetorical contentions are not persuasive and do not state plausible claims for recession or reformation based upon a unilateral mistake of fact.

The purpose of the Rate Lock Letters was to confirm and fix the interest rate for a certain amount of time while the terms of the loans were to be and were set forth in the subsequently provided Notes. Further, contrary to Plaintiff's assertions, the language describing the Yield Maintenance Period does not state the prepayment premium during this period would be either one-percent of the principal balance or the remaining balance.

Further, even assuming, without finding, the language describing the Yield Maintenance Period in the Rate Lock Letters was as "ambiguous and misleading" as Plaintiff proclaims, then Plaintiff had even a greater duty to read the terms of the Notes, which Plaintiff knew or should have known would contain the full terms of the loans, including the prepayment premium. Plaintiff's problem, however, is that the language describing how the prepayment premium in Schedule A of the Notes is calculated is not ambiguous or misleading. It clearly shows the prepayment premium would be the greater of one-percent of the principal being repaid or the "product obtained by multiplying" "the amount of principal being repaid" "by" two other variables described in subparts (B) and (C) of the equation that clearly have the effect of increasing the end "product" in a manner that helps the lender recapture some of its lost profits attributable to the prepayment. Any reasonably prudent person who reads this description would readily understand that, if the loan was repaid sooner than later, then the amount of the principal being repaid would be larger rather than smaller, and that multiplying the remaining principal balance by factors (B) and (C) would result in a figure that was substantially greater than one-percent of the principal amount of the loan. While factors (B) and (C) might arguably be hard to comprehend for some, they are not ambiguous or unclear; to the extent they appeared to be, Plaintiff had a legal duty to inquire before signing.

In its opposition, Plaintiff attempts to suggest that the unilateral mistake of its representative was justified because Ms. McCain "is an 87-year old woman." (Amd. Opp. At 1.) However, Plaintiff neither alleges or shows that Ms. McCain's age and/or gender justifiably excused her failure to make a reasonable inquiry to ascertain or understand the meaning and content of the terms of the prepayment premium set forth in the Notes prior to execution. To the contrary, experience and common sense suggest Ms. McCain was a relatively sophisticated real estate investor otherwise Plaintiff would not have selected her to represent it in the underlying refinancing transaction with Greystone. Moreover, assuming Ms. McCain was acting in her capacity as Plaintiff's sole or principal shareholder, experience and common sense also dictates that an 87-year old investor would be concerned about the terms of the

prepayment period for a loan with a 30-year term and would take extra special care to ascertain the terms of the prepayment penalty.

In short, as Greystone asserts, if Plaintiff was subjectively mistaken about the amount of the prepayment premium, such a mistake was caused entirely by Plaintiff's own failure to read the very documents that Plaintiff attached as exhibits to the Complaint. Plaintiff's factual allegations and attached exhibits tend to amplify the degree of its representative's neglect rather than show its predicament is attributable to a unilateral mistake of fact caused by Greystone.

Accordingly, Plaintiff has failed to state plausible claims for relief based upon any unilateral mistake of fact.

### E. Negligent Misrepresentation Claims (claims 2 and 5)

Two essential elements of a claim for negligent misrepresentation are absent from the FAC: (1) an untrue representation made by the defendant as to a past or existing material fact, and (2) the plaintiff's justifiable reliance on the representation. *Continental Airlines, Inc. v. McDonnell Douglas Corp.*, 216 Cal. App. 3d 388, 402 (1989).

The FAC identifies only one "representation" of the prepayment premium made by Greystone as being an allegedly negligent misrepresentation, *i.e.,* Greystone's description of the Yield Maintenance Period in the Rate Lock Letters. As described above, however, the Rate Lock Letters do not contain any misrepresentation at all. They accurately set forth that the 30-year loans have a Yield Maintenance Period of 15 years, followed by 14 years and 9 months at one percent; and the final 3 months "open." Further, Plaintiff's negligent misrepresentation claims fail because Plaintiff could not have justifiably relied on the representation. In a commercial transaction, where the Rate Lock Letters were a precursor to the main agreement -- the Notes -- it was neither reasonable nor justifiable for Plaintiff to ignore or not carefully read the terms of the Notes themselves before signing them. Had Plaintiff's representative even cursorily glanced at the Schedule A she initialed, she would see that the prepayment premium was the "greater" of one-percent or an amount that was based upon multiplying "the amount of principal being repaid" by not one, but two other factors.

### F. Declaratory Relief (Claims 3 and 6)

Plaintiff seeks declaratory relief as to the amount of the prepayment premium, its right to rescind the Oak Street Property Note, and the ability to reform the Almont Property Note. For the same reasons discussed above, there is no actual controversy for the Vourt to consider any declaratory judgment.

### G. Breach of Contract (Claim 7)

The elements of a breach of contract claim are "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom." *Wall Street Network, Ltd. v. New York Times Co.*, 164 Cal. App. 4th 1171, 1178 (2008) (internal quotations omitted).

Plaintiff alleges the contract was evidenced by the Almont Property Rate Lock Letter and the Almont Property Note. As discussed above, these documents set forth a 15-year Yield Maintenance Period in which the prepayment premium may exceed one-percent, followed by a period of 14 years, 9 months during which the prepayment premium would be exactly one-percent.

Inconsistent with Plaintiff's own exhibits, Plaintiff alleges that one of the material terms of the contract was that the prepayment premium would never exceed one-percent. This allegation is not plausible, is contradicted by the exhibits, and must be disregarded. *Iqbal*, 129 S. Ct. at 1949; *Lazy Y Ranch Ltd,* 546 F.3d at 588; *Durning*, 815 F.2d at 1267.

Accordingly, the FAC fails to state a plausible breach of contract claim upon which relief can be granted.

### H. Negligence (Claim 8)

Plaintiff's negligence claim is based on Greystone's alleged breach of a "duty to obtain [the] loans in accordance with the terms represented in the Rate Lock Letters." Not only is there no such legal duty owed by Greystone to Plaintiff, but there also is no breach of this purported duty. First, the contracts at issue in this action are the Notes, with Greystone as the lender and Plaintiff as the borrower. Generally, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role

as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991). Rather, "[l]iability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Wagner v. Benson*, 101 Cal. App. 3d 27, 35 (1980). The non-conclusory factual allegations of the FAC do not allege or show this occurred here.

Second, Greystone did not breach the asserted duty because, as discussed above, the Rate Lock Letters and Notes show the loans were indeed made in accordance with the general terms described in the Rate Lock Letters.

### I.   Elder Abuse (Claim 9)

This claim is frivolous because Plaintiff is a business entity, not a person. Under the California Elder Abuse and Dependent Adult Care Civil Protection Act, "financial abuse" of an elder involves the "taking, secreting, appropriating, obtaining or retaining *real or personal property of an elder* or dependent adult." Cal. Welf. & Inst. Code §15610.30, subd. (a) (emphasis added). A necessary but missing element here is the interference with property owned by an elder, "a person 65 years of age or older residing in California." Cal. Welf. & Inst. Code §15610.27. Plaintiff has no standing to sue for elder abuse because it is a limited liability company, not a person 65 years of age or older. And Ms. McCain, who is not a plaintiff in this action, did not have any property taken from her. Accordingly, the Complaint does not and cannot state a claim for elder abuse.

### J.   Constructive Fraud/Breach Of Fiduciary Duty (Claims 10 & 11)

Constructive fraud is (1) a breach of duty by which a person, without actual fraudulent intent, gains an advantage by misleading another to his or her prejudice, or to the prejudice of someone claiming under him or her; or (2) an act or omission that the law specially declares to be fraudulent, without respect to actual fraud. Cal. Civ. Code § 1573(1)-(2). Constructive fraud occurs if there is a breach of duty arising from a confidential or fiduciary relationship. *Byrum v. Brand*, 219 Cal. App. 3d 926, 937-938 (1990). The relationship between a lender and borrower is that of creditor and debtor, and does not create a fiduciary relationship. *Price v. Wells Fargo Bank*,

213 Cal. App. 3d 465, 476 (1989) (no fiduciary relationship between bank and its loan customers). And a requisite element for a breach of fiduciary duty claim is the existence of a fiduciary relationship. *Pellegrini v. Weiss*, 165 Cal. App. 4th 515, 524 (2008). The FAC fails to allege any facts establishing that Greystone was anything but a lender on the Notes. As such, the claims for constructive fraud and breach of fiduciary duty fail to state plausible claims for relief.

### K. Dismissal With Prejudice In Greystone's Favor

A plaintiff's failure to correct deficiencies in a prior pleading is "a strong indication that plaintiff[ has] no additional facts to plead." *Zucco Partners, LLC v. Digimarc Corporation*, 552 F.3d 981, 1007 (9th Cir. 2009) [internal quotations omitted]. The new matter alleged in the FAC does not cure the defects in the original complaint and Plaintiff cannot state a plausible claim under the circumstances. As Plaintiff has been given the opportunity to plead additional facts and has failed to do so, the FAC is dismissed without leave to amend and with prejudice as to Greystone. All unserved Doe defendants are dismissed without prejudice.